# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JMER PROPERTIES, LLC, | § | |
| | § | No. 225, 2022 |
| Plaintiffs Below, | § | |
| Appellants, | § | Court Below—Court of Chancery |
| | § | of the State of Delaware |
| v. | § | |
| | § | C.A. No: 2020-0597 |
| THE STATE OF DELAWARE | § | |
| DEPARTMENT OF | § | |
| TRANSPORTATION | § | |
| | § | |
| Defendant Below, | § | |
| Appellee, and | § | |
| | § | |
| MEDING FAMILY, LLC, | § | |
| a Delaware limited liability company, | § | |
| KAY-DE-DID, LLC, | § | |
| a Delaware limited liability company, | § | |
| ROB'S RIDES, LLC, | § | |
| a Delaware limited liability company, | § | |
| and ROBERT WAYNE MEDING | § | |
| and MELINDA MEDING, | § | |
| | § | |
| Nominal Defendants | § | |
| Below, Nominal | § | |
| Appellees, | § | |

Submitted: December 14, 2022
Decided: January 30, 2023

Before **SEITZ**, Chief Justice; **VAUGHN** and **TRAYNOR**, Justices.

## <u>ORDER</u>

This 30th day of January 2023, after consideration of the parties' briefs and the record on appeal, it appears to the Court that:

1.     The "Turf Field Complex," located along State Route 1 in Kent County, opened for business in May 2017, boasting a stadium and twelve synthetic sports fields that host soccer, lacrosse, and other large athletic tournaments throughout the year.

2.     The Meding family owns "[a]n approximately 37.60-acre assemblage of parcels" located on the west-side of State Route 1, roughly 700 feet from the southern boundary of the Turf Field Complex.[1]  The property is undeveloped aside from a restaurant called "Meding's Seafood."  To take advantage of the economic opportunity presented by the arrival of the complex, the Medings formulated a plan to convert the unused portion of their property into a commercial development, to include a Wawa convenience store and a hotel.

3.     The Medings' plan placed the family in direct competition with JMER Properties, LLC, which had recently purchased a plot of land for development on the west-side of State Route 1 located roughly 250 feet from the northern edge of the complex.

4.     To service their proposed development, the Medings requested permission from the state's Department of Transportation ("DelDOT") to replace their restaurant's existing, but limited, "rights-in/rights-out" entrance with an off-ramp and on-ramp onto State Route 1.  The ramp—which would service the

_____
[1] App. to Answering Br. at B41.

2

development by connecting to an access road, which itself would connect to a to-be-constructed service road running parallel to State Route 1—would increase the number of vehicles able to enter the Meding property.

5.      The Medings' proposal required DelDOT to complete a Traffic Impact Study ("TIS") to determine the feasibility of the plan.  On June 2, 2021, DelDOT issued its final TIS Review Letter, granting preliminary approval for the construction of an off-ramp from State Route 1 to the Meding property.[2]

6.      JMER believes that this TIS Review Letter constituted the final word on whether the Medings' development would be allowed direct access to State Route 1.  JMER had also requested DelDOT for direct access to State Route 1, but DelDOT denied that request.

7.      JMER sued DelDOT—and, nominally, the Medings—in the Court of Chancery, seeking declaratory and injunctive relief that would effectively prohibit the Medings from building an off-ramp from State Route 1.  JMER claims, among other things, that any grant to the Medings of access from and to State Route 1 exceeds DelDOT's statutory and regulatory authority, would be arbitrary and capricious, and would deprive JMER of its "constitutional right to equal protection under 42 U.S.C. § 1983."[3]  JMER also contends that allowing the Medings direct

---

[2] The TIS Letter did not, however, address the Medings' request for an on-ramp.
[3] App. to Opening Br. at A38.

3

access to State Route 1, when JMER was denied such access, would confer on the Medings a "unique and unprecedented competitive advantage."[4]

8. The Medings and DelDOT moved to dismiss JMER's complaint as "premature" because "DelDOT . . . ha[d] not yet definitively granted or approved any new access to Route 1."[5] After hearing oral argument on the motion to dismiss, the Court of Chancery dismissed JMER's complaint "without prejudice on the ground that the dispute is not ripe."[6] The court's written order incorporated the reasons announced by the court during the parties' hearing.[7] At the conclusion of the hearing, the court encouraged the parties to return once their dispute was ripe (*i.e.*, once the Medings had received final approval to construct their proposed new entrance).

9. In this appeal, JMER contends that the Court of Chancery's dismissal was in error and that DelDOT's final TIS Review Letter was, in fact, DelDOT's final determination on whether the Medings' development would ultimately be allowed direct access to State Route 1.

10. Delaware courts are permitted, under the Declaratory Judgment Act, to issue declaratory judgments where an "actual controversy" exists between the

---

[4] Opening Br. at 15.
[5] App. to Opening Br. at A356, A378.
[6] Opening Br., Ex. 1.
[7] *Id.*

parties.[8] There are four prerequisites for an actual controversy to exist, one of which requires that "the issue involved in the controversy [] be ripe for judicial determination."[9]

11.     A case is "ripe" when its underlying controversy has "matured to a point where judicial action is appropriate."[10] The inquiry is governed by a "common sense assessment of whether the interests of the party seeking immediate relief outweigh the concerns of the court in postponing review until the question arises in some more concrete and final form."[11] Consequently, judicial action is inappropriate where "the claim is based on uncertain and contingent events that may not occur, or where future events may obviate the need for judicial intervention."[12] The relevant "common sense" inquiry before us now is whether DelDOT's final TIS Review Letter can be considered a final decision that renders JMER's claims ripe for adjudication. We hold that it cannot.

12.     Section 2.2.3.1(H) of the DelDOT Manual describes the function of a TIS review letter: "When DelDOT finds that the TIS is satisfactory and agrees with its conclusions, DelDOT shall establish conditions for approval of construction and

---

[8] *XL Specialty Ins. Co. v. WMI Liquidating Tr.*, 93 A.3d 1208, 1216–17 (Del. 2014).
[9] *Id.* at 1217.
[10] *Stroud v. Milliken Enterprises, Inc.*, 552 A.2d 476, 480 (Del. 1989) (citing *Schick Inc.*, 533 A.2d at 1239)).
[11] *XL Specialty Ins. Co.*, 93 A.3d at 1217.
[12] *Id.*

5

subdivision streets and for approval of access to state-maintained roadways, and shall provide a letter detailing the conditions to the Applicant."[13]

13.     The final TIS Review Letter is, therefore, a conditional document.  It describes the conditions that a developer must meet in order to obtain final approval of their project.

14.     To receive final approval from DelDOT, the Medings must first comply with the conditions specified in the TIS Review Letter, which require the Medings to submit detailed design and construction drawings that show the precise location of the proposed off-ramp, the turning radii of the off-ramp, the Medings' plan for a deceleration lane leading to the off-ramp, and a host of other technical requirements. When the Court of Chancery dismissed JMER's complaint, the Medings had yet to complete those plans.

15.     Even if DelDOT were to issue final approval, moreover, the Medings would still be required to submit a plan to Kent County for approval.  This generally requires a preliminary meeting with Kent County planning staff and the submission of a preliminary plan that complies with the requirements of the Kent County Code.[14]   The preliminary plan is then transferred to the county's planning commission, which is tasked with scheduling a public hearing to review the plans

---

[13] DelDOT Manual, § 2.2.3.1(H).
[14] *See generally* KENT COUNTY, DEL., CODE ch. 187.

and to take comments from the public. The planning commission can either approve, deny, or conditionally approve the proposal. If the commission chooses to approve or conditionally approve the Medings' plan, the family must then gain approvals from every other state and county agency with jurisdiction over their property (of which DelDOT is only one). When the Court of Chancery dismissed JMER's complaint, the Medings had yet to submit any plans to the county.

16. After the preliminary plan is approved by all the relevant actors, the Medings must then submit a record plan that is in compliance with all conditions for approval. Only after the record plan is approved and recorded may the Medings apply for a building permit.

17. To put the point in a nutshell, DelDOT's final TIS Review Letter is just one step in the Medings' quest for final approval of their proposed new entrance. As of now, we do not yet know whether the Medings can or will comply with the conditions contained in the TIS Letter or whether the county will approve the Medings' proposal. Common sense, therefore, informs us that the TIS Letter is not sufficiently final as to merit judicial action. We agree with the Court of Chancery's determination that this dispute is not yet ripe.

18. As the Court of Chancery suggested, JMER can return to the courts when its claim is ripe. Until then, we conclude that adjudicating this case now, when

outstanding contingencies may still "obviate the need for judicial intervention," would risk the unnecessary expenditure of valuable judicial resources.[15]

NOW, THEREFORE, IT IS ORDERED that the judgment of the Court of Chancery be AFFIRMED.

BY THE COURT:

*/s/ Gary F. Traynor*
Justice

---

[15] We note that JMER has promised that, if this dispute "is not resolved here and now," it will continue to raise "challenge[s] . . . at every subsequent step in the development process for the Meding Property – when the Medings seek preliminary site plan approval from Kent County, when the Medings seek a 'letter of no objection' from DelDOT, when the Medings seek final site plan approval from Kent County, and when the Medings seek an entrance permit from DelDOT." Opening Br. at 31. JMER's vow to institute litigation at "every one of these steps in the process" will, JMER warns, cause "the parties and the courts" to expend "substantial additional resources . . . along the way." *Id.* We trust, however, that JMER's counsel will, to the extent that such a strategy is at odds with the Court of Chancery's ripeness determination, which we affirm today, exercise appropriate professional judgment and restraint.